Hey Police Court. Good morning. I'm Mike Richardson from Chattanooga here on behalf of the appellants in this cause. The appellants are all retired policemen and firefighters who worked most of their lives in excess of 25 years for the City of Chattanooga. They retired with a certain expectation of retirement benefits to which they had been promised and which they had paid for which were vested and accrued. A new administration came into power in Chattanooga a couple of years ago and decided to amend or change the pension benefits that these retirees had been promised that they had worked for. Specifically the statutory scheme was amended in a couple of respects. One of which was to delete a guaranteed annual fixed determinative cost of living adjustment that they had been promised every year for three years and another provision. The legislation on the issue goes back to 2000. Prior to 2000, the city pension fund had a cost of living adjustment that was tied into the consumer price index. In the year 2000, the city code, which is the pension plan, was amended to, here's the statutory scheme, they get a base retirement plan, which is a formula which vests after ten years of service. In 2000, the city code, which is the pension legislation, was amended to say we're no longer going to have this cost of living adjustment tied into the consumer price index. They were guaranteed in writing, they were guaranteed you're going to get a 3% increase every year. The statutory scheme says your base retirement benefits, the benefits payable to the retirees, shall be increased every year by 3%. That came in 2000. The legislation that is issued here that reduced the cost of living adjustment was enacted in 2014. We filed the suit in Helmand County Chancellor's Court, and I suggest state Tennessee law controls. It was removed to federal court. Judge Collier determined that there was not a clear and unmistakable legislation intent to be bound. And with all due respect, we say there was, Your Honor. There's been a recent pronouncement... Legislation, I mean, just to get right to the... Legislation is subject to amendment, is it not? Sometimes, Your Honor, but not always. If the legislation is clear and the intent is unmistakable to be bound, then it cannot be amended. Recently, the Sixth Circuit has issued an opinion in Puckett v. Lexington, and this court laid down the standard. In determining whether a legislature intended to bind itself contractually, the courts must examine both the language of the statute and the circumstances surrounding its enactment or amendment, things such as purpose, context, history, or other evidence of actual intent. Here, when you look at the language of the statute and the surrounding circumstances, it's clear and unmistakable that Chattanooga intended to be bound. And I think... Isn't that alleged clearness and unmistakability tied to language of vesting and accrual? Yes, it is, Your Honor. And clearly under... How is this vested and accrued, I guess? Well, Your Honor, under Tennessee law... You lose, right? It's got to be vested and accrued or you lose, right? That's right. You're right, because the statutory scheme says the city cannot decrease any financial benefit that is vested and accrued. I understand that. Your Honor, under Tennessee law, we cited the Blackwell case, which is Tennessee Supreme Court, which is the leading case in Tennessee. And we also cited a recent Tennessee Attorney General's opinion, which covers the law. Under Tennessee law, and I'm reading from the Tennessee Attorney General's opinion, which cites the Blackwell case, a vested employee is one who has complied with all conditions necessary to be eligible for retirement allowance. In this case, that definition is fit 100 percent by these retirees. That makes him a vested employee. It doesn't mean that everything he gets is vested. Well, it makes him a vested employee. And the statute says if it's vested and an accrued benefit. An accrued benefit... A vested employee and then there's a vested benefit, right? Two different things. That's right, Your Honor. Well, I'm reading from the... It says a vested employee. Now, what's a vested benefit? A vested benefit is something that's been promised to you that cannot be taken away. The city code, the pension legislation, tracks the Blackwell case almost verbatim. And it says you cannot reduce financial benefits once you've earned them. And this case... Vested means something different from accrued then, right? Well, you almost get into a semantical... You can get into a semantical discussion, but I think there is a distinction. Vested is what Blackwell says. If you've complied with the conditions necessary, you're vested. Accrued means if it's a fixed... Means you've been getting them, right? No. Your Honor, I would suggest accrued means if it's a benefit that is fixed, determinative amount that is calculated precisely at the time of retirement. These benefits were calculated. They were determinative. And in fact, and this is in the record, the city had already accrued for these... At the time of retirement? I'm sorry. It's already accrued or not at the time of retirement? Yes, Your Honor. If that's what the Tennessee statute says, they're kind of torturing the word a little bit, aren't they? Well, they are, but the city... Because accrued doesn't normally mean something like that. I mean, we don't even know how long he's going to live. Is it accrued for the year 2025? I mean, we don't know. In this case... It's already accrued. Well, in this case, the statute says your base retirement benefits shall be increased every year by 3%. The future calculations as to how much that was going to cost the city had already been calculated and accrued. The amount of the payment has not been determined, and that's what you just said was the definition of accrued. The obligation has been determined and... How's that different from vested now? Well, vested is if you've complied with the conditions necessary to your entitlement. Accrued means, has it already been determined and taken into account? If they base something on the fact that you retired a long time ago, that that was already vested before you even got it, the words just don't seem to mean that. I know that you have cases and I have to go look at the cases, but I'm just trying to get at the meaning of the words. It doesn't seem like you could say something, a specific amount that hasn't even been provided or calculated yet has vested and accrued merely because the basis for his entitlement has already happened. Your Honor, under this pension legislation, an employee works 10 years and they are vested. All these gentlemen... That doesn't mean everything they gratuitously give them later is also vested just because it's based on the fact that he had those 10 years. I'm not saying this was gratuitous, but I'm saying it just doesn't follow automatically from the fact that he worked for 10 years and is vested that whatever bonus they may happen to give is also vested. It's got to be something more, right? But when I say, what is it more? You say, well, they work for 10 years and they're vested. It's a circle that doesn't connect. The pension legislation says you're vested after 10 years. It doesn't define accrued. But in this case, it says the base benefits shall be increased every year by 3%. And this may be a semantical argument, but it's an important semantical argument to these gentlemen who paid into this fund for many years. Can I ask this in a slightly different way, which is not too dissimilar to what happened here? How would this work? You have a shall language that says you shall get an increase in your pension benefits based on the CPI, the Consumer Price Index, okay? So that means they're going to fluctuate, but you would say shall, and it applies to people that already been 10 years. Could a city that did that say after a while, well, we don't want to do that anymore. We're going to say it shall be 3% a year regardless of CPI. Would that be legal? I mean, because on one hand, that benefits them some years because particularly now 3% is well over the CPI, but there could obviously be years where it hurts them. What would be the answer to the original shall says shall get increases based on the CPI? Can that be changed to just a flat 3% down the road? Your Honor, I think it could under case law from the First Circuit. Now this is an evolving area of the law, but I think a huge- I'm really struggling. I don't, I'm really struggling with if you can change that as of course that's pretty similar to what happened here because there was something that tracked the CPI. That just seems to confirm the idea when you're talking about cost of living increases. The norm is that they do fluctuate and sometimes that's the whole point. They track the CPI. Your Honor, in the only case, the main retiree case out of the First Circuit turns on that point. The very little case law in the country seems to turn on whether is it a variable rate which can be changed if you comply with state law versus this is a fixed, determinative guaranteed 3%. Under these circumstances, under this legislation- They take this and go back to pure CPI? No, Your Honor, they could not. The 3%- They can modify from CPI to a flat 3%, but they can't go back from 3% to CPI. Not once they enacted it the way it is. Let me point out something else, Your Honor, that's important. Under Tennessee- In all my examples, it uses the word shall, just to be clear. Well, and I understand in the public case, shall is one of the reasons the legislative intent is important, but it doesn't stand alone. But despite your argument, wasn't this plan amended twice before, even with the shalls in it? Two other times between 2000 and your filing. But they were not amended in a way so as to diminish or take away financial benefits payable to the retirees. This has the direct effect of diminishing- It has to diminish if that answers your question. Is it true? I mean, you're brief and it's well-argued, continually talks about reduction and diminishment, but under this scheme, is there any situation where a retiree is getting more per month one year than the previous year? No, Your Honor, because- That's right. That's right, Your Honor. But again, the way- When you're talking about intent, it would seem much more likely that when they provided these things, they were providing for them subject to providing something else later. And that's the whole issue, right? If they were saying, we now contractually obligate ourselves to give 3% forever, that would fit within your argument. But it seems kind of counterintuitive that less definite language should be interpreted that way when nobody's getting less. We're just talking about how much more they're getting. Well, again, the city code in 2000 was amended to say, your base retirement shall be increased by 3% every year. Let me point out- That's how they legislate these things. That's how they changed them before. They use shall because they want their subordinates to do what the statute says. So they say shall. I'm making it mandatory and directive. The arbitrariness and the ability to take away has been taken away from the legislative body. You want them to say may? You want them to say they may give this money? That makes it sound like they don't have to give it from month to month. Your Honor, let me point out, under Tennessee law, and again, I suggest Tennessee law controls this situation, the Blackwell case in the recent Tennessee Attorney General's opinion says this very clearly, a legislative body can and does have the right to amend pension legislation if, and here's a big if, but the statute, the city has to reserve the right specifically and expressly in the enabling legislation. The Tennessee Attorney General's opinion says the legitimate expectations under the plan cannot be substantially thwarted by amendment. In this case, that's what the city would do They did not reserve the right in the 2000 legislation to take away the guaranteed flat 3% annual cost of living adjustment. They did so in other respects. The other major feature of the 2000 amendment, in addition to the guaranteed 3% COLA, was something they called a drop provision, which is a deferred retirement option plan that basically gave some retirees the right to take a lump sum payout. That had a specific reservation. It had a very specific language that said the drop can be modified or discontinued at any time. There's no language like that with respect to the flat guaranteed 3%. Any further questions? Thank you, Counselor. Thank you, Your Honor. Good morning, Your Honors. Zachary Green for the City of Chattanooga. We have two defendants and we'd like to split argument. I'd like to take 12 minutes. Any daylight between the positions of the two defendants? There may be some, but I don't believe there is very much. That's why I've been sent up here to propose. I think there's very little daylight between the two positions, Your Honor. Is he going to explain the daylight or are you going to explain the daylight? I'll explain the daylight, or I'll attempt to. I think what I'm hearing is I'll take the 15. Several things Mr. Richardson said. He kept saying guarantee. The word guarantee appears nowhere in the City Code. There is no language in the City Code that expresses an unmistakable intent by the City of Chattanooga to forever bind itself to a 3% COLA. I think the Court's questions are right on point and the Puckett decision that a COLA by its nature is not a benefit. It's an adjustment to a benefit and it's designed to give city legislatures opportunities to allow the pension plan to change as economic circumstances change. What do you do with the negative inference from the drop? From the drop? I think the negative inference, I think Puckett's very clear on the negative inference. In a court, it's at odds. It's completely at odds with unmistakability. This court can negatively infer that intent from the fact that this language appears somewhere but not somewhere else. The Puckett opinion is clear on that. Also the drop is totally different. The drop itself modifies expressly the base benefit that these plaintiffs earn. It's referenced in the base benefit calculation that if you modify the multiple canned, the years of service aspect of the calculation. In that way, it's much more a benefit than the COLA which is treated completely separately which doesn't contain any kind of language cross-referencing itself to the base benefit. What would happen in this case if everything about it were the same except that at the time they passed the 3% fixed in 2000, the retirees had agreed to increase their medical insurance premium. They'd agreed to put more money in for the same coverage but the quid pro quo, the quo was getting a fixed 3% increase in their pension. What would happen then? Everything else is the same. Same language. One issue with your hypothetical, Judge Sutton, is that that assumes that these are bargain for exchanges. That's the point of my hypothetical. I don't want to hear you tell me that this is not that. I know that. Just tell me what the answer is with that quid pro quo. If this was a true bargain for exchange, if this was part of collective bargaining, for example, which it's not, then I think that it would appear more contractual but the city, it would still fall on this court to determine whether that bargaining was done forever. We're never going to take this away. It's language of contract and the court would still have to proceed through the unmistakability analysis. That would be one circumstance the court could consider in conjunction with other circumstances. I would agree that in that instance, it may be more down the road towards making the legislation a contract than it is here. Certainly nothing like that occurred here. The circumstances of the passage of the 2000 legislation are important. Several things happened other than the drop and the COLA when the 2000 legislation was passed. One of those was Section 2411 D was added, which expressly reserves the right to amend the pension legislation. In fact, it took the amendment procedure out of the city charter, which required a referendum, and it allowed the city council to amend the pension plan solely through ordinance, ordinary legislation. The CPIs at the time, the prevailing CPIs at the time in 2000 were much higher than and more like 3% than they are now. There is nothing in this record that shows that the city council in 2000 intended to bind itself. In fact, it did the opposite. It reserved the right to amend things that are not vested accrued benefits. You look at the vesting language of the city code, 2415, 2411, where the benefits are conveyed. In 2415, the 10 year vesting, the city council used the language of right, which is much more akin to contractual language than the language that the plaintiffs are traveling under here. By the way, does this record include any evidence about any of the main plaintiffs about their vesting, when they vested or retired? I believe in the depositions that we submitted, the plaintiffs did not submit any record evidence on summary judgment. They mentioned that... To try to find the vested and accrued, we couldn't actually find that. That's correct. But I think if there is evidence in the record, I think in Mr. Frazier's deposition, he actually retired in 1999 before these changes were even passed. Is that in the record? I believe it is in the record. The depositions are at record entry 39, behind an exhibit there. I can't remember which exhibit, Mr. Frazier's deposition. This is coming from left field, but just maybe there's a real quick answer. What does ERISA say about cost of living, as opposed to other retirement benefits? This isn't an ERISA plan. ERISA doesn't apply to municipal pension legislations. What I'm asking is, my assumption was that ERISA would say, when you retire, the norm is that whatever the benefits you vest when you retire, and that the benefits you get then can't be reduced, barring bankruptcies and the like. Am I right about that? And that would extend to cost of living? I honestly don't know, Your Honor. I'm not well versed on ERISA. I know that some of the cases that have been cited are ERISA cases, which do not apply here. I think that there is a particular provision in ERISA, and again, take this with a grain of salt, the ERISA vesting is certainly very different, and ERISA may treat COLAs differently than they are in these public pension plans, which are not covered by ERISA. The vesting here is not linked with retirement. There is a vesting at 10 years, then at 25 years, the multiplier is increased because you've served longer. That's the only real change. That's the service retirement pension, which Section 2419 of the City Code says you are entitled to. Again, more like the language of contract than the shall here, in a completely separate provision and no cross-referencing. I apologize that I can't answer your ERISA question, Judge Sutton, more directly. I have a question about your position and the language that your position is tied to. As I understand your position, the 3% COLA is not vested, and even if somehow vested, has not accrued. Correct. Do you have an additional, more fundamental argument that it's not a quote, benefit, unquote? You're not arguing that. We argue, though, that it is not a benefit in the way that that term is used in the Code. The benefits, every time ... It's an alternative argument? It's an alternative argument. It's certainly not accrued because, as Judge Collier found, this is something that expressly, it accrues each ensuing January 1. This change was prospective, not retrospective. I understand the vested and accrued argument. I'm trying to see whether you're ... But you're not depending on this argument that it's not a benefit? I'm not depending on it. I think we went under either argument. I think when benefits are used, the term benefits are used, granted, any time you get something, it's a benefit, in the plan, in the Code. The term benefits are used in 2411A, the service retirement pension. 2415, the vesting provision, which gives the base, the base pension. It refers to those things as benefits. The summary plan description, which is not the Code here, which is just a handbook given, but the plaintiffs have taken the position that that somehow gives them rights or that they rely on, which is incorrect. It lists specifically, these are your benefits, and it's the base pension. I understand. I guess what I'm saying is if we have some discretion as to what to rely on, it's less intuitively acceptable to call this not a benefit, whereas it makes pretty clear sense to argue at least that it's not vested and not accrued, but it's sufficient. I think the accrual argument is sufficient that Judge Collier ruled on and adopted. Mr. Richardson referenced Tennessee law. I think the law is clear that federal law applies here. I think that's the General Motors versus Romaine case. You could bring a ... I'm not sure what you mean by that. You could rely on the Tennessee Constitution. They didn't. Right, but you said it controls as if you couldn't have an independent claim under a contract clause, the Tennessee Constitution. They filed a federal contract clause claim. That's the claim pending, and I think the Romaine case is ... I thought they did mention the Tennessee Constitution in their complaint. Not the Tennessee contract clause, Your Honor. They filed a law of the land clause claim, which is the Tennessee equivalent of the due process clause. That claim has been waived, but what I was going to say about the Blackwell decision is if the court were to consider that decision, we win anyway, because the Blackwell decision is clear that even when you vest, it says specifically you don't vest in all of the terms and conditions of the plan, and you must still look at the terms and conditions and how the language is used. So it's the same analysis that we say this court should apply, the unmistakability analysis, that the COLA is not a benefit. I think Puckett is on all fours with that, and it's not something that you are entitled to as a vested benefit, and it's not something certainly that has accrued going forward, because this was a prospective change, not a retrospective change. No monies that these plaintiffs have earned through their years of service have been lost or impaired. The record, I just have about a minute left here, the record on the other element, the necessary, reasonable and necessary, we have put evidence in the record on reasonable and necessary that the situation, I think it's very important to point out, this is not a situation in which the City of Chattanooga caused this problem by not funding the plan, by borrowing from the plan. The City always paid more than it was statutorily required. It paid the actuarial required contribution, even over the years as those amounts went up. This is the City Council doing what it's required to do, what it's bound to do, and translate based on changing economic circumstances. We ask that the District Court's summary judgment be affirmed. Just very briefly, Judge Sutton, let me respond to your question about ERISA, because we mentioned this in my brief. Even though this is not an ERISA case, ERISA and IRS law would support the appellant's position. ERISA law is what you postulated, Your Honor. The formula in effect at the time of retirement is what the retirees have an entitlement right to. Including cost of living. Yes, Your Honor. The formula in effect, and that's buttressed by this Arizona case that we cited, the Honorable Judge Fields v. Elected Officials of Arizona, Arizona Supreme Court. The District Court tried to distinguish that case because it involved rights under the Arizona Constitution. Well, in this case, the Tennessee Supreme Court in Blackwell has given retirees the same right as the retired judge in Arizona. Is Blackwell a contract clause case? It is, Your Honor. Your complaint refers to the law of the land provision of the Tennessee Constitution. We do. We also refer to impairment of contracts under Tennessee law. But you don't cite that provision of the Tennessee Constitution, right, in the complaint? I think we did, Your Honor. I thought you only cited the law of the land provision of the Tennessee Constitution. Well, we specifically refer to the Blackwell case. We may have even appended it as an exhibit to our original complaint filed in Hamilton County State Chance to Record. The Blackwell case, again, stands for the proposition that pension legislation bestows contractual rights upon the retirees. And you have a right to not have your rights diminished subsequent to your retirement. These rights, going back to the semantical discussion, these rights were vested and accrued. And back to that discussion, I don't think I said this earlier, they were clearly accrued because accrued, by definition, just means the rights have been calculated, they're determined, and they're enforceable. In this case, the city of Chattanooga, and this is in the record, actually calculated the future cost of this guaranteed 3% COLA in the future, based upon the life expectancy of these retirees. So they had already accrued that as a liability. How does that follow? That's the definition of accrual. In this case, the city of Chattanooga... Calculated and predicted, and therefore it's accrued? That's part of the accounting definition of accrual. You can accrue future contingent liabilities, and in this case, the city did exactly that. So they knew what they owed these retirees before they arbitrarily tried to take back their guaranteed promise. And the last thing I want to mention is the city wants to dance around this guarantee. Judge Collier didn't consider the fact that there were representations and promises made back in 2000 to these retirees that this 3% fixed annual rate is guaranteed. The city wants to dance around that. Judge Collier didn't consider it because he cited the Puckett case at the lower level for the proposition that you can't consider extrinsic evidence. But recently, the Sixth Circuit in Puckett says you can consider all the surrounding evidence to show actual intent. And this case is clear based upon the legislative language, the failure to reserve the right to amend or delete or diminish benefits, and the guarantees and promises made to these retirees that the city should not be able to abrogate or take away their vested and accrued rights that they worked for and served for over 25 years.